No. 24-01147

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

APRIL MALICK, et al.,
*Plaintiff-Appellants,*

v.

CROSWELL-LEXINGTON DISTRICT SCHOOLS, et al.,
*Defendant-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 2:22-cv-11126
The Honorable David M. Lawson

---

## BRIEF OF AMICUS CURIAE PUBLIC JUSTICE
## IN SUPPORT OF PLAINTIFF-APPELLANTS
## AND REVERSAL

---

Alexandra Z. Brodsky
Sean Ouellette
Adele P. Kimmel
Sarah Ortlip-Sommers
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
(202) 797-8600
abrodsky@publicjustice.net

*Counsel for Amicus Curiae*

**CORPORTATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amicus curiae states that it has a parent corporation, is not owned in whole or in part by any publicly held corporation, and is not itself a publicly held company.

# TABLE OF CONTENTS

CORPORTATE DISCLOSURE STATEMENT ..........................................i

TABLE OF AUTHORITIES .................................................... iii

STATEMENT OF AMICUS CURIAE ...................................... 1

INTRODUCTION ...................................................................... 2

ARGUMENT ................................................................................ 3

I.     This Court need not, and should not, resolve a novel and unsettled question of state law currently before the Michigan Court of Appeals................................................................................... 3

II.    A school may be directly liable under the ELCRA for its negligence to peer race-based harassment. .......................................... 7

III.   The ELCRA does not use Title IX and Title VI's liability standard for school responses to peer harassment....................................... 10

     A.     The U.S. Supreme Court has adopted an unusually demanding liability standard for peer harassment claims under Title IX and Title VI................................................... 11

     B.     Michigan courts frequently decline to adopt federal standards in favor of more rights-protective interpretations of state law. ............................................................. 14

     C.     The U.S. Supreme Court's reasons for adopting actual knowledge and deliberate indifference standards are inapplicable to the ELCRA. ................................................. 15

     D.     The ELCRA's text forecloses Title IX and Title VI's standard for actionable harassment. ................................................. 19

CONCLUSION ........................................................................... 21

CERTIFICATE OF COMPLIANCE ...................................... 22

CERTIFICATE OF SERVICE................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blank v. Dep't of Corr.*,
611 N.W.2d 530 (Mich. 2000) ............................................................. 17

*Blankenship v. Parke Care Ctrs., Inc.*,
123 F.3d 868 (6th Cir. 1997) ............................................................ 9, 10

*Bowman v. Shawnee State Univ.*,
220 F.3d 456 (6th Cir. 2000) ............................................................... 11

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998) ............................................................................ 11

*Cannon v. Univ. of Chicago*,
441 U.S. 677 (1979) ............................................................................ 18

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) .............................................................................. 6

*Chambers v. Trettco, Inc.*,
614 N.W.2d 910 (Mich. 2000) ....................................................... 14, 20

*Danca v. Kmart Corp.*,
No. 208738, 2000 WL 33407239
(Mich. Ct. App. Aug. 25, 2000) ....................................................... 9, 10

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999) ................................................................... *passim*

*Doe ex rel. Kolokithas v. Alpena Pub. Sch. Dist.*,
No. 165441, 2024 WL 3573522 (Mich. July 29, 2024) ............... *passim*

*Doe ex rel. Subia v. Kansas City Sch. Dist.*,
372 S.W.3d 43 (Mo. Ct. App. 2012) ................................................. 8, 17

*Elezovic v. Bennett*,
731 N.W.2d 452 (Mich. Ct. App. 2007) ........................................ 7, 9, 10

*Farmer v. Brennan,*
511 U.S. 825 (1994) ................................................................ 5

*Fitzpatrick v. Bitzer,*
427 U.S. 445 (1976) .............................................................. 16

*Gebser v. Lago Vista Ind. Sch. Dist.,*
524 U.S. 274 (1998) ................................................... *passim*

*Gilbert v. DaimlerChrysler Corp.,*
685 N.W.2d 391 (Mich. 2004) ............................................. 7

*Haynie v. State,*
664 N.W.2d 129 (Mich. 2003) ........................................... 14

*In re Brewster St. Hous. Site in Detroit,*
289 N.W. 493 (1939) ........................................................... 17

*Kollaritsch v. Mich. State Univ. Bd. of Trustees,*
298 F. Supp. 3d 1089 (W.D. Mich. 2017) ......................... 20

*L.W. ex rel. L.G. v. Toms River Reg'l Sch. Bd. of Ed.,*
915 A.2d 535 (N.J. 2007) ..................................................... 8

*Lehman Bros. v. Schein,*
416 U.S. 386 (1974) ............................................................... 4

*McJunkin v. Cellasto Plastic Corp.,*
608 N.W.2d 57 (Mich. 2000) ............................................. 14

*Mercer Island Sch Dist v. Off. of the Superintendent
of Pub. Instruction,*
347 P.3d 924 (Wash. Ct. App. 2015) ................................. 17

*Meritor Sav. Bank, FSB v. Vinson,*
477 U.S. 57 (1986) .............................................................. 11

*Musson Theatrical, Inc. v. Fed. Express Corp.,*
89 F.3d 1244 (6th Cir. 1996) ............................................... 6

*People v. Bullock,*
485 N.W.2d 866 (Mich. 1992) ........................................... 14

*People v. Tanner,*
    853 N.W.2d 653 (Mich. 2014) ....................................................... 14, 15

*Pierce v. Commonwealth Life Ins. Co.,*
    40 F.3d 796 (6th Cir. 1994) ................................................................ 10

*Radtke v. Everett,*
    501 N.W.2d 155 (Mich. 1993) ........................................................ 9, 11

*Rasheed v. Chrysler Corp.,*
    517 N.W.2d 19 (Mich. 1994) ................................................................ 7

*Rouch World, LLC v. Dep't of C.R.,*
    987 N.W.2d 501 (Mich. 2022) .............................................................. 7

*Stiles ex rel. D.S. v. Grainger Cnty.,*
    819 F.3d 834 (6th Cir. 2016) ................................................................ 5

*Thompson v. Ohio State Univ.,*
    639 F. App'x 333 (6th Cir. 2016) ..................................................... 5, 12

*Transamerica Ins. Co. v. Duro Bag Mfg. Co.,*
    50 F.3d 370 (6th Cir. 1995) ................................................................. 6

*Vance v. Ball State Univ.,*
    570 U.S. 421 (2013) .............................................................................. 8

*Washington v. Pierce,*
    895 A.2d 173 (Vt. 2005) ..................................................................... 17

*Zell v. Ricci,*
    957 F.3d 1 (1st Cir. 2020) ................................................................ 4, 6

**Statutes**

Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101
    *et seq.* ................................................................................................ 2

Mich. Comp. Laws Ann. § 37.2202(1)(a) .................................................. 8

Mich. Comp. Laws Ann. § 37.2402(a) ...................................................... 8

Mich. Comp. Laws § 37.2102(1) ............................................................. 15

Mich. Comp. Laws § 37.2103(k) ............................................................. 20

Mich. Comp. Laws § 37.2602 ......................................................... 18, 19

Mich. Comp. Laws § 37.2603 ................................................................. 19

**Other Authorities**

Fatima Goss Graves, *Restoring Effective Protections for Students against Sexual Harassment in Schools: Moving Beyond the* Gebser *and* Davis *Standards*, 2 Advance 135 (2008) ..................................................................................... 13

Restatement (Third) of Agency § 2.04 (Am. L. Inst. 2006) ..................... 10

Shiwali Patel, Elizabeth X. Tang & Hunter F. Iannucci, *A Sweep As Broad As Its Promise: 50 Years Later, We Must Amend Title IX to End Sex-Based Harassment in Schools*, 83 La. L. Rev. 939 (2023) ................................................................. 13

## STATEMENT OF AMICUS CURIAE

Public Justice is a national public interest advocacy organization that fights against abusive corporate power and predatory practices, the assault on civil rights and liberties, and the destruction of the earth's sustainability. Public Justice has, for decades, litigated and advocated on behalf of students who have experienced discrimination, including race-based harassment. From its significant experience, Public Justice recognizes that judicial enforcement of state race discrimination laws that is consistent with the statutes' full breadth and promise is crucial to ensuring students who have endured discrimination receive the redress they deserve.

## INTRODUCTION

This case comes to this Court at an awkward moment. April and Rob Malick, and their daughter C.M., sued Croswell-Lexington District Schools for failing to address years of racial harassment by C.M.'s classmates—a failure that twice drove C.M. out of school. Earlier this year, a district court granted summary judgment to the school on all claims, including one under the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* ("the ELCRA"). And just one week before the Malicks filed their opening brief, the Michigan Supreme Court asked the Michigan Court of Appeals to determine under what circumstances a school may be directly liable under the ELCRA for its response to student-on-student harassment. Accordingly, the Michigan Court of Appeals is poised to soon provide the correct standard for courts to evaluate ELCRA claims like the Malicks'.

This Court should allow the state courts the opportunity to answer this question of state law. And, fortunately, this Court can resolve the Malicks' appeal without getting ahead of the Michigan courts. Regardless of whether a school may be liable for its negligence or only its deliberate indifference, the Court should reverse the district court's grant of

summary judgment on the ELCRA claim. Alternatively, the Court could certify the question to the Michigan Supreme Court.

If, however, the Court decides to reach the question recently posed by the Michigan Supreme Court, it should hold that a school may be liable under the ELCRA for its negligence to peer racial harassment. In doing so, this Court should decline to adopt the federal standard for student-on-student harassment claims, given significant textual and structural differences between the relevant federal and state statutes.

## ARGUMENT

### I.  This Court need not, and should not, resolve a novel and unsettled question of state law currently before the Michigan Court of Appeals.

Two weeks ago, the Michigan Supreme Court addressed, for the first time, a peer harassment claim brought by a student under the ELCRA. *See Doe ex rel. Kolokithas v. Alpena Pub. Sch. Dist.*, No. 165441, 2024 WL 3573522, at *1 (Mich. July 29, 2024). There, the Michigan Supreme Court held that a school may not be vicariously liable under the ELCRA for student-on-student sexual harassment. *Id.* at *1. But it remanded to the court of appeals to determine whether the plaintiff could establish a claim based on "a theory of direct (as opposed to vicarious)

liability under the ELCRA." *Id.* at *6. As Justice Cavanagh explained in her concurrence, "a direct non-agency theory of liability would require a focus on defendants' notice of [the] harassment, their responsive actions within the educational environment, and how defendant's actions impacted plaintiff." *Id.* at *7 (Cavanagh, J., concurring).

    As a matter of federalism and judicial economy, this Court should allow the state courts to determine the correct state-law standard for peer harassment cases like the Malicks'. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974) (discussing how a federal court giving a state court the opportunity to answer a novel and unsettled state law question "save[s] time, energy and resources and helps build a cooperative judicial federalism"). The Michigan Supreme Court has posed the question and the Court of Appeals will soon answer. Plus, federalism interests are especially strong when the law at issue "implicates sensitive, down-home local interests, i.e., [Michigan's] schools and the interpretation of [Michigan] law governing schools' liability." *Zell v. Ricci*, 957 F.3d 1, 17 (1st Cir. 2020).

    And there is no need for this Court to determine the scope of ELCRA liability to resolve the Malicks' appeal. If the Court reverses the district

court's disposition of the Malicks' federal claims—as it should—it can reverse on the state claim as well without choosing a liability standard. In *amici*'s view, if a school responds to actionable peer harassment with negligence, it violates the ELCRA. *See infra* Part II. Below, the district court suggested that the ELCRA instead requires deliberate indifference. Opinion, R. 67, Page ID # 4239 (assuming ELCRA uses Title VI's liability standard). That more demanding standard is the same one the Malicks must meet to establish liability under federal law. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (explaining deliberate indifference is a more demanding standard than negligence); *Thompson v. Ohio State Univ.*, 639 F. App'x 333, 342 (6th Cir. 2016) (collecting cases holding Title VI peer harassment claims require deliberate indifference); *Stiles ex rel. D.S. v. Grainger Cnty.*, 819 F.3d 834, 852 (6th Cir. 2016) (adopting same standard for section 1983 peer harassment claims). So, if the Court holds that a jury could find the District was deliberately indifferent and reverses on the federal claims, it can also reverse on the ELCRA claim: Whether the Michigan courts end up requiring negligence or deliberate indifference, the District's response will satisfy that standard.

If the Court affirms the district court's grant of summary judgment on the Malicks' federal claims, the Court should reverse and remand on the ELCRA claim because the district court wrongly exercised supplemental jurisdiction over it. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (similar). In this case, supplemental jurisdiction is particularly inappropriate because the Malicks' ELCRA claim presents a "substantial issue[] of state law" not only "best resolved," but soon to be resolved, "in state court." *Zell*, 957 F.3d at 16.

Alternatively, this Court could certify to the Michigan Supreme Court the question of when a school may be directly liable under the ELCRA for its response to peer harassment. *See Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). Indeed, the Michigan Supreme Court recently indicated interest in that question, even though it was not presented by the case before it. *Alpena*, 2024 WL

3573522, at *6; *see id.* at *7 (Cavanagh, J., concurring) (explaining limited universe of arguments before the court in peer harassment case).

## II.    A school may be directly liable under the ELCRA for its negligence to peer race-based harassment.

If this Court chooses to reach the question pending before the Michigan Court of Appeals, it should hold that a school may be liable under the ELCRA if it is negligent in the face of peer race-based harassment of which it knew or should have known, and its negligence harms the victim's education.

The ELCRA is modeled on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the federal law that prohibits employment discrimination. *See Rouch World, LLC v. Dep't of C.R.*, 987 N.W.2d 501, 507 (Mich. 2022); *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 27 n.20 (Mich. 1994). Like its model, the ELCRA mandates that an employer is liable for a hostile work environment caused by co-worker's sex- or race-based harassment "when the employer has notice of the harassment and fails to take appropriate corrective action," *Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, 414 (Mich. 2004), even though a plaintiff's co-workers do not act as an employer's "agents" when they harass their peer, *Elezovic v. Bennett*, 731 N.W.2d 452, 458 (Mich. Ct. App. 2007). The same

standard must apply when a school fails to adequately respond to student-on-student harassment that creates a hostile educational environment. *See Doe ex rel. Subia v. Kansas City Sch. Dist.*, 372 S.W.3d 43, 53 (Mo. Ct. App. 2012) (applying state employment-law negligence standard to student-on-student harassment claims where the same state law governed both); *L.W. ex rel. L.G. v. Toms River Reg'l Sch. Bd. of Ed.*, 915 A.2d 535, 549 (N.J. 2007) (same).

That conclusion flows from the ELCRA's text. The ELCRA uses the same operative language to prohibit discrimination in employment and education: Just as an employer may not "discriminate against an individual" with respect to her employment "because of . . . race . . . [or] sex," Mich. Comp. Laws Ann. § 37.2202(1)(a), "an educational institution shall not . . . [d]iscriminate against an individual" in its educational programs and "because of . . . race . . . or sex," *id.* § 37.2402(a). As the U.S. Supreme Court has recognized, that same language prohibits an employer's "perpetuation of a discriminatory work environment," so an employer is "directly liable" under Title VII if its "negligent" response to co-worker harassment "leads to the creation or continuation of a hostile work environment." *Vance v. Ball State Univ.*, 570 U.S. 421, 426–27, 446 (2013); *see*

*Danca v. Kmart Corp.*, No. 208738, 2000 WL 33407239, at *11 & n.20 (Mich. Ct. App. Aug. 25, 2000) (explaining that an employer that "knew or should have known" of a co-worker's harassment "and failed to stop it" is liable for its "own negligence" (quoting *Chambers v. Trettco, Inc.*, 591 N.W.2d 413, 415 (Mich. Ct. App. 1998), *vacated on other grounds*, 614 N.W.2d 910 (Mich. 2000)). That is true even though a plaintiff's co-workers do not act as the employer's agents when they harass their peer. *See Elezovic*, 731 N.W.2d at 458 (explaining that "coworkers who do not have supervisory powers or authority" do not act as an employer's "agents" "for purposes of the [EL]CRA"). On the same logic, schools are "directly liable when they fail to take appropriate remedial action" in response to student harassment and "instead create a hostile educational environment that deprives a student" of the educational opportunities that the ELCRA protects, even if the harassers are not its agents. *Alpena*, 2024 WL 3573522, at *6 (Cavanagh, J., concurring).[1]

---

[1] Michigan courts, like this Court, have sometimes erroneously referred to an employer's liability for workplace harassment as "respondeat superior" liability. *See Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872 (6th Cir. 1997); *Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. 1993). But both this Court and Michigan courts have recognized that "when the complainant alleges sexual harassment by [a plaintiff's] coworkers, the

## III.    The ELCRA does not use Title IX and Title VI's liability standard for school responses to peer harassment.

Contrary to the district court's assumption below, federal law governing student harassment claims would be a poor model for claims brought under the ELCRA. The U.S. Supreme Court has adopted a parsimonious liability standard for sex- and race-based harassment claims brought by students under federal civil rights law. And the text of the ELCRA, and structural differences between it and relevant federal statutes, demonstrate different standards are appropriate under state and federal law.

---

'respondeat superior' label inaccurately characterizes the employer's liability, which represents direct liability" based on the employer's "own negligence," *Danca*, 2000 WL 33407239, at *11 n.20; *see Blankenship*, 123 F.3d at 872 (same); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 804 (6th Cir. 1994) (same). After all, the theory of "respondeat superior" says that an employer is vicariously liable only "for torts committed by employees while acting within the scope of their employment," Restatement (Third) of Agency § 2.04 (Am. L. Inst. 2006)—and under both Michigan and federal law, a co-worker does not act as an employer's "agent" when he harasses a co-worker, *Elezovic*, 731 N.W.2d at 458; *see, e.g.*, *Pierce*, 40 F.3d at 804. So "[i]n co-worker harassment cases, the employer" must be "liable, if at all, directly, not derivatively." *Blankenship*, 123 F.3d at 872.

10

A.    **The U.S. Supreme Court has adopted an unusually demanding liability standard for peer harassment claims under Title IX and Title VI.**

The ELCRA is a single statute that prohibits sex discrimination in workplaces and schools, among other contexts. By contrast, federal law relies on two separate statutes to root out discrimination in these separate arenas. The U.S. Supreme Court has adopted different liability standards for sexual harassment claims brought under each law. And, perversely, federal anti-discrimination law is more protective of adult workers who experience sexual harassment than it is of students who experience the same harms.

For hostile environment harassment claims, Title VII uses a standard similar to the one the ELCRA uses for workplace harassment claims. *See supra* p. 7. An employer may be liable if it knew or should have known about workplace harassment and failed to take reasonable steps to address it. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462–63 (6th Cir. 2000). The U.S. Supreme Court has defined actionable sexual harassment as "unwelcome" sexual conduct that is "severe or pervasive." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67–68 (1986); *see also Radtke*, 501

N.W.2d at 163 (defining sexual harassment in a manner "[n]ot unlike title VII").

Yet the U.S. Supreme Court adopted a much less protective standard for sexual harassment claims brought under Title IX of the Education Amendments of 1972, which prohibits sex discrimination in education, 20 U.S.C. § 1681(a)—a standard also applied to Title IX's sister statute, Title VI, which prohibits race discrimination, *see Thompson*, 639 F. App'x at 342.

In two cases from the late 1990s, *Gebser* and *Davis*, the Court designed a test for establishing schools' liability for sexual harassment of students by teachers or classmates. *See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 632 (1999) (student-on-student sexual harassment); *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 277 (1998) (teacher-on-student sexual harassment). In *Gebser*, the Court considered importing the Title VII sexual harassment standard for Title IX, but rejected that option. *Gebser*, 524 U.S. at 283–84. Instead, it designed a new liability standard, explaining it had "a measure of latitude to shape a sensible remedial scheme" "[b]ecause the private right of action under Title IX is judicially implied." *Id.* at 284. The scheme the Court

12

created required a student to establish that her school had been deliberately indifferent to sexual harassment of which the school had actual knowledge and, at least in cases of peer harassment, that the harassment was severe and pervasive. *Davis*, 526 U.S. at 650; *Gebser*, 523 U.S. at 277.

Collectively, these requirements make it far harder for children to establish sexual harassment claims under Title IX than for adult workers to establish harassment claims under Title VII: Students must establish actual rather than constructive knowledge, deliberate indifference rather than negligence, and severe *and* pervasive harassment rather than severe *or* pervasive harassment. *See* Shiwali Patel, Elizabeth X. Tang & Hunter F. Iannucci, *A Sweep As Broad As Its Promise: 50 Years Later, We Must Amend Title IX to End Sex-Based Harassment in Schools*, 83 La. L. Rev. 939, 973 (2023); Fatima Goss Graves, *Restoring Effective Protections for Students against Sexual Harassment in Schools: Moving Beyond the* Gebser *and* Davis *Standards*, 2 Advance 135, 139-43 (2008).

**B.    Michigan courts frequently decline to adopt federal standards in favor of more rights-protective interpretations of state law.**

Michigan courts have made clear that while they might, at times, be "guided in [their] interpretation of [the ELCRA] by federal court interpretation of its counterpart statutes," it is "not compelled to follow those federal interpretations." *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 917 (Mich. 2000); *see also Haynie v. State*, 664 N.W.2d 129, 139 (Mich. 2003) (similar). Michigan courts' primary obligation when interpreting Michigan law is to always "ascertain and give effect to the intent of the Legislature, . . . 'as gathered from the act itself.'" *McJunkin v. Cellasto Plastic Corp.*, 608 N.W.2d 57, 61 (Mich. 2000) (quoting *In re Ramsey*, 581 N.W.2d 291, 293 (Mich. Ct. App. 1998)). Consistent with that principle, the Michigan Supreme Court has frequently interpreted state law to be more rights-protective than corresponding federal laws. *See, e.g.*, *People v. Bullock*, 485 N.W.2d 866, 871 n.9 (Mich. 1992) (collecting cases).

In the context of constitutional litigation, this Court has identified factors—equally applicable to statutory cases—that inform whether it should adopt a federal standard. *See People v. Tanner*, 853 N.W.2d 653, 666 n.17 (Mich. 2014). These factors include "the textual language of the

14

state [law]," "significant textual differences between parallel provisions of" federal and state law, and "structural differences between the state and federal" laws. *Id.* As explained below, in this case, all three factors militate against adopting the federal liability standard.

### C. The U.S. Supreme Court's reasons for adopting actual knowledge and deliberate indifference standards are inapplicable to the ELCRA.

In designing a new liability standard for Title IX, rather than importing Title VII's, the U.S. Supreme Court relied on considerations inapplicable to claims brought under the ELCRA. These include (1) the structure of federal sex discrimination law, (2) Congress's authority for passing Title IX, and (3) Title IX's administrative enforcement scheme.

*First,* and perhaps most simply, Title VII and Title IX are separate statutes. In *Gebser,* the U.S. Supreme Court was attuned to differences between the two statutes' texts, purposes, and sources of congressional authority, which, in the Court's view, rendered Title VII precedent inapplicable. *See, e.g., Gebser,* 524 U.S. at 283, 286–87. In contrast, the ELCRA is a single statute that provides for harassment claims against both schools and workplaces, among other spheres. Mich. Comp. Laws § 37.2102(1). So, while the liability standards for Title VII and Title IX

15

are different because Title VII and Title IX are different, it makes sense for the ELCRA to apply analogous standards across the many contexts it reaches.

*Second*, and related, the U.S. Supreme Court based its Title IX decisions on the fact that Title IX—unlike Title VII, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–53 & 453 n.9 (1976)—is a Spending Clause statute. The law was passed under the federal constitutional provision permitting Congress to condition federal funding on the recipient's consent to certain terms—in the case of Title IX, the term being that recipients may not discriminate on the basis of sex. *Davis*, 526 U.S. at 640 ("[W]e have repeatedly treated Title IX as legislation enacted pursuant to Congress' authority under the Spending Clause."). The U.S. Supreme Court has analogized this "promise . . . not to discriminate" to a "a contract between the Government and the recipient of funds." *Gebser*, 524 U.S. at 286. As in a contract, it has explained, the funding recipient must have clear notice of what conduct would violate the agreement and trigger money damages. *Id.* at 287. *Gebser*, without much explanation, assumed that principle meant schools must have more than constructive knowledge of harassment to be liable under Title IX. *Id.* at 287–88.

16

*Gebser*'s logic does not translate to the ELCRA, which is not dependent on the state's spending powers and is not constrained by the contract analogy. *See In re Brewster St. Hous. Site in Detroit*, 289 N.W. 493, 500 (1939) (explaining that, unlike the federal legislature, the Michigan legislature does not act pursuant to constitutional grants of legislative power); *Blank v. Dep't of Corr.*, 611 N.W.2d 530, 556 (Mich. 2000) (Cavanagh, J., dissenting) (noting that, unlike the U.S. Congress, the Michigan legislature "operates pursuant to a broad grant of legislative authority"). Multiple other state high and appellate courts have adopted more generous liability standards than *Gebser* and *Davis* on the basis that their state remedies are not limited by the federal Spending Clause. *See, e.g.*, *Washington v. Pierce*, 895 A.2d 173, 184 (Vt. 2005); *Mercer Island Sch Dist v. Off. of the Superintendent of Pub. Instruction*, 347 P.3d 924, 938, 942 (Wash. Ct. App. 2015); *Subia*, 372 S.W.3d at 53–54 (Mo. Ct. App. 2012).

*Third*, in adopting the actual knowledge and deliberate indifference requirements, *Gebser* relied on a quirk in federal enforcement of Title IX with no analogue in the ELCRA. Title IX, like the ELCRA, may be enforced either through a private right of action or through a complaint to

17

a civil rights agency. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 683, 709 (1979) (describing Title IX's enforcement scheme); Mich. Comp. Laws § 37.2602 (describing the ELCRA's enforcement scheme). But Title IX, unlike the ELCRA, includes a requirement that the responsible agency give a defendant the opportunity to come into voluntary compliance with the law before it commences an enforcement action. *Compare Gebser*, 524 U.S. at 288 (noting Title IX's voluntary compliance provision) *with* Mich. Comp. Laws § 37.2602 (describing Michigan Department of Civil Rights' "powers and duties").

*Gebser* reasoned that because this administrative enforcement system "require[s] notice" and "an opportunity for voluntary compliance," liability in court should only be available where the school had, during the events at issue, actual knowledge of the harassment. 524 U.S. at 289. *But see id.* at 303–04 (Stevens, J., dissenting) (critiquing *Gebser*'s analogy to administrative remedies). *Gebser* also held that this administrative enforcement scheme meant that, in private litigation, damages should only be available when a school was deliberately indifferent to harassment. 524 U.S. at 290. That state of mind, the Court reasoned, was most analogous to that of an obstinate school that refused to comply with the

18

law even after being hauled before a federal agency on a civil rights complaint. *Id*.

Once again, these considerations are inapplicable to the ELCRA: The statute contains no analogous requirement that the Michigan Department of Civil Rights provide an opportunity for voluntary compliance. *See* Mich. Comp. Laws § 37.2602. To the contrary, the MDCR is permitted "[a]t any time after a complaint is filed" to seek preliminary or temporary injunctive relief from a circuit court. Mich. Comp. Laws § 37.2603. The U.S. Supreme Court's justifications for limiting Title IX's powers offer no reason for this Court to similarly weaken the ELCRA.

### D.   The ELCRA's text forecloses Title IX and Title VI's standard for actionable harassment.

This Court should not limit the ELCRA's protections to only "severe and pervasive" harassment because the ELCRA defines sexual harassment, and in a manner that looks far more like Title VII's standard than Title IX and Title VI's. Under the ELCRA's plain text, sexual harassment cognizable as illegal discrimination includes "unwelcome sexual advances . . . and other verbal or physical conduct or communication of a sexual nature" that "has the purpose or effect of substantially interfering with an individuals' . . . education . . . , or creating an intimidating,

19

hostile, or offensive . . . educational . . . environment." Mich. Comp. Laws § 37.2103(k). As the Michigan Supreme Court has explained, it will not adopt a federal liability standard "if doing so would nullify a portion of the Legislature's enactment." *Chambers*, 614 N.W.2d at 917. And there is no reason for ELCRA race discrimination claims to use different legal standards than ELCRA sex discrimination claims.

Further, although *Davis* did not expressly explain why it adopted a severe and pervasive standard rather than a severe or pervasive standard, the Court appeared to believe that only severe and pervasive harassment could have the effect of excluding a victim from educational opportunities. *See Davis*, 526 U.S. at 650–52. That assumption has, sadly, proven untrue. *See, e.g.*, *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 298 F. Supp. 3d 1089, 1102 (W.D. Mich. 2017) (recounting how single rape severely disrupted student's education), *rev'd and remanded on other grounds*, 944 F.3d 613 (6th Cir 2019).

## CONCLUSION

This Court should reverse the district court's grant of summary judgment on the Malicks' claims and remand for further proceedings.

August 15, 2024                    Respectfully submitted,

/s/ *Alexandra Z. Brodsky*
Alexandra Z. Brodsky
Sean Ouellette
Adele P. Kimmel
Sarah Ortlip-Sommers
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
(202) 797-8600
abrodsky@publicjustice.net

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and 29(a)(5) because it contains 3,996 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Century Schoolbook font.

Dated: August 15, 2024          */s/ Alexandra Z. Brodsky*
                                Alexandra Z. Brodsky
                                *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: August 15, 2024           */s/ Alexandra Z. Brodsky*
                                 Alexandra Z. Brodsky
                                 *Counsel for Amicus Curiae*